BRENARD MFG. CO. v. BARNETT.
(No. 2093.)

(Court of Civil Appeals of Texas. Texarkana. March 13, 1919.)

1. EVIDENCE ⬤⟶441(1) — PAROL EVIDENCE — ADMISSIBILITY.

Evidence of an oral agreement that a contract should run six months, instead of twelve months, as stipulated in written contract later executed by the parties, is inadmissible.

2. BILLS AND NOTES ⬤⟶491 — BURDEN OF PROOF.

Defendant maker has the burden of showing why plaintiff payee should not recover on notes according to their tenor and legal effect.

Appeal from Hunt County Court; A. J. Gates, Judge.

Action by the Brenard Manufacturing Company against L. T. Barnett. Judgment for plaintiff for part of the demand, and it appeals. Affirmed as modified.

Appellant was in the advertising business at Iowa City, Iowa. Appellee was in the drug business at Quinlan, Tex. August 7, 1914, appellee gave to appellant's salesman (one McBride), for transmission to appellant, an order in writing as follows (so far as material to the understanding of the case):

"Quinlan, Tex., August 7, 1914.

"Brenard Mfg. Co.—Gentlemen: On your approval of this order deliver to me at your earliest convenience, f. o. b. factory or distributing point, the Claxton piano, watches, silverware and advertising matter described on this and reverse side, in payment for which I herewith hand you my six notes, payable to your order, aggregating $435. If order is not approved and shipped by you the notes are to be cancelled and returned to me.

"My last twelve months sales were $12,000 and upon this figure my next twelve months sales to be $15,000 and that if 2½ per cent. of my gross sales does not amount to $435 for the next twelve months you will pay me the deficiency in cash and send your bond for $435 to cover this agreement with me. You are to conduct all of the correspondence in securing club leaders and members in conducting the Club Extension Campaign.

"To make the last above paragraph binding upon you I agree to furnish you within ten days approximately 150 names and addresses of persons whom I believe will make good club leaders and members with whom you are to take up correspondence immediately. I agree to take the shipments promptly, carry out the Trade Extension Campaign plan, promptly meet all obligations entered into under this agreement, keep the piano well displayed in my store, issue piano votes for each cent purchased, and every 60 days of this contract to report to you my gross sales, and promptly furnish you all information you request to enable you to push the Trade Extension Campaign.

"[Signed]      L. T. Barnett, Purchaser."

The six notes referred to in the order were for $72.50 each. Appellee paid two of them when they matured, but refused to pay the other four. The suit was by appellant on the four dishonored notes, to enforce payment thereof. In his answer appellee alleged that his gross sales during the 12 months covered by the contract amounted to only $5,547.70. He further alleged that by the terms of the contract he was entitled to recover of appellant $297.31, the difference, he charged, between 2½ per cent. on said $5,557 and $435. He prayed that said sum of $297.31 be offset against any sum the court found he owed appellant. Appellant replied that appellee was not entitled to assert the offset he claimed, because he had not complied with his undertaking to carry on the advertising campaign and pay the notes he had made at their maturity, and had not furnished appellant statements of his gross sales as he agreed to. In reply to this charge appellee in a supplemental answer alleged:

"That at the time of the execution of said contract it was understood between the parties that the principal period for the retail drug business in this country was from September 1st of each year to about the first of January of the following year; that it is a fact and was so understood and known by the parties, and they contracted with that knowledge in view, that the six months following the date of said contract was when business was best, and when in the ordinary course of business two-thirds or more of the volume of business for the current 12 months was transacted; that during the

months of September, October, November, and December following the date of contract the sales of defendant largely decreased and to such an extent that it was entirely obvious that it would decrease to the extent that defendant would owe plaintiff nothing more than he had paid; that plaintiffs are nonresidents of the state of Texas, having their domicile in the state of Iowa, more than 1,000 miles from Quinlan; and that they have not now, and did not have during said period, any property within defendant's knowledge within the state of Texas, subject to execution, out of which he could collect a judgment against them."

It did not appear from the evidence heard at the trial that appellant failed to comply with any part of its undertaking. But it did appear therefrom without dispute that six months after the date of the contract appellee. ceased to carry on the "Trade Extension Campaign" and to make the reports of his gross sales he had agreed to make to appellant. Over appellant's objection, on the ground that it changed the contract as reduced to writing, the court permitted appellee to testify as follows:

"After the contract was signed, I had an agreement or understanding with the agent of plaintiff to the effect that the contract would begin on the 1st day of September, 1914, and run for six months. He told me that I might make reports of sales every 60 days until the contest closed, and we would then settle according to the figures for the first six months, if it did not run up to the expectations, which we thought it would do at that time."

It appeared from the testimony that appellee's gross sales for the 12 months covered by the contract amounted to $6,156.60. The judgment was in appellant's favor for $64.01, which was the difference between the amount of the notes sued on and $281.09, the difference between $435 and 2½ per cent. of appellee's gross sales for the 12 months covered by the contract.

Geo. S. Perkins, of Greenville, and Edward A. Kennedy, of Iowa City, Iowa, for appellant.

H. L. Carpenter, of Greenville, for appellee.

WILLSON, C. J. (after stating the facts as above). [1] The theory upon which the trial court set off $281.09 in appellee's favor against the amount of the notes sued on, and awarded appellant a recovery of the sum of only $64.01, was that the contract evidenced by the order for the advertising outfit had been modified as the testimony of appellee set out in the statement above indicated it had been, so that appellee, notwithstanding he had not carried on the "trade extension campaign" nor reported his gross sales every 60 days during the 12 months immediately following the date of appellant's approval of the order, as he agreed he would, was entitled to recover of appellant the difference between $435 and 2½ per cent. of the amount of his gross sales for said 12 months. We think the testimony referred to was subject to the objection urged to it, to wit, that it contradicted the writing evidencing the contract between the parties, and that it therefore was inadmissible and not entitled to be considered by the court in determining the controversy. The rule applicable has been stated as follows:

"The execution of a contract in writing is deemed to supersede all the oral negotiations or stipulations concerning its terms and subject-matter which preceded or accompanied the execution of the instrument, in the absence of accident, fraud or mistake of fact; and any representation made prior to or contemporaneous with the execution of the written contract is held to be inadmissible to contradict, change or add to the terms plainly incorporated into and made a part of the written contract." 10 R. C. L. 1016, 1019; and see 2 Elliott on Contracts, 926 et seq.; Gale Mnfg. Co. v. Finkelstein, 59 S. W. 571.

It is apparent from the record that the understanding which appellee testified he had with appellant's agent was reached before the order (by appellant's approval thereof) became binding on the parties as a contract, and that the testimony therefore was within the rule just set out, and not within the exception thereto stated by appellee.

[2] The burden was on appellee to show a legal reason why appellant should not recover on the notes according to their tenor and legal effect. He failed to discharge the burden. The judgment therefore should have been in appellant's favor for the amount of the notes. It will be reformed so as to adjudge a recovery in appellant's favor against appellee of the sum of $345.10, instead of $64.01, and as so reformed will be affirmed.